*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

BRIANNA FRYE,

Plaintiff-Appellant,

v

MICHIGAN STATE HOUSING DEVELOPMENT
AUTHORITY,

Defendant-Appellee.

UNPUBLISHED
July 30, 2026
9:29 AM

No. 371937
Ingham Circuit Court
LC No. 23-000740-AA

Before: M. J. KELLY, P.J., and PATEL and KOROBKIN, JJ.

PER CURIAM.

Defendant, Michigan State Housing Development Authority (MSHDA), terminated plaintiff, Brianna Frye, from the federal Housing Choice Voucher (HCV) program without an opportunity for a hearing. Frye appeals by leave granted[1] the circuit court's order dismissing her claim of appeal for lack of jurisdiction under the Administrative Procedures Act (APA), MCL 24.201 *et seq*. We reverse and remand for further proceedings.

## I. FACTUAL BACKGROUND

MSHDA is Michigan's public housing agency (PHA) that accepts and administers federal funding from the United States Department of Housing and Urban Development (HUD) to subsidize rent for individuals with low income. 42 USC 1437f(o); 24 CFR 982.1(a); MCL 125.1422(c). Community Management Associates, Inc. (CMA), a private corporation, manages the voucher program on MSHDA's behalf. A voucher participant must meet several obligations

---

[1] This Court initially denied Frye's delayed application for leave to appeal. *Frye v Mich State Housing Dev Auth*, unpublished order of the Court of Appeals entered March 6, 2025 (Docket No. 371937). Frye applied for leave to appeal to the Supreme Court, which remanded this case to this Court for consideration as on leave granted. *Frye v Mich State Housing Dev Auth*, ___ Mich ___; 24 NW3d 799, 799 (2025).

to receive and maintain a voucher.  See 24 CFR 982.551.  If the participant fails to meet program requirements and obligations, MSHDA can terminate the voucher.  See 24 CFR 982.552.

In July 2015, Frye applied for subsidized housing at Hamilton Crossing in Ypsilanti and was placed on a waiting list.  In February 2019, Frye was approved for a rental unit at Hamilton Crossing and moved into the unit with her minor son.  Frye's rental subsidy was provided through HUD's Project-Based Voucher (PBV) program, which is a component of the HCV program, and was attached to her specific unit at Hamilton Crossing, which is managed by KMG Prestige.[2]

In the summer of 2022, Hamilton Crossing conducted an inspection of Frye's unit.  Frye's brother and cousin were present during the inspection but Frye was absent.  Frye maintains that she was not present at the time of the inspection because, between July and September 2022, she was caring for her sick grandmother at her grandmother's home in Macomb County.  During that time, Frye "occasionally" stayed overnight at her grandmother's home and left her minor son under the care of her brother at the Hamilton Crossing rental unit.  Frye contends that she "was never absent from the unit for more than a few days at a time."  She further asserts that her brother had his own home in Canton and did not live in her rental unit.  Frye maintains that her cousin visited Michigan for one week in July 2022 and, during that week, he visited her rental unit "a few times during the day."

In August 2022, Frye requested an HCV voucher so that she could move from Hamilton Crossing.  On August 19, 2022, Kim Tripp, a CMA employee, e-mailed Frye requesting her phone number.  On August 20, 2022, Frye responded to Tripp's e-mail and Tripp called Frye to explain "the process for getting a voucher."  On August 24, 2022, Jamie Jackson, the PBV manager for CMA, sent an e-mail to KMG Prestige stating that Frye "has requested to move with HCV assistance," and inquired whether Frye was "in Good Standing with management."  On August 25, 2022, La Tasha Dexter, a Hamilton Crossings community manager with KMG Prestige, replied:

> It has been reported to our office Ms. Frye has vacated the unit and allowed her brother and cousin to live in the unit.  I spoke to Ms. Frye and she stated she had been out of town and they were looking after the place.  After performing an inspection of the unit, there is no evidence that Ms. Frye is still residing in the unit all [sic].  We have consulted legal on the next steps.

Tripp was copied on Dexter's e-mail.  Jackson replied that Tripp would "be following up with [Frye] as well."  According to Frye, on September 1, 2022, she "notified Hamilton Crossing in writing that she wanted to move, but she verbally rescinded this notice soon thereafter."

In September 2022, MSHDA purportedly sent Frye a notice that it was terminating her participation in the HCV program.  The notice was dated September 13, 2022, and was backdated to take effect on August 31, 2022.  The notice stated that Frye's participation in the program was being terminated because she abandoned or vacated the unit without notice.  The notice elaborated,

---

[2] An HCV is tenant-based and can be transferred to other location.  A PBV is unit-based and tied to a specific building or property.

"Tenant moved from a Project Base Unit before they were approved." The second page of the notice describes the reason for termination as "Tenant move [sic] from unit." The notice advised that Frye was entitled to request an informal hearing, and that the request "must be **received** by" October 3, 2022, and "[a] request received after this date will not receive a hearing." A hearing request form was included on the third page. The form stated that Frye had the right to legal representation at the hearing, along with the opportunity to present witnesses, refute MSHDA's evidence, and examine and be provided with pertinent documents. CMA, in Big Rapids, was listed as the entity to contact with questions, and to whom to send the request form. However, Frye maintains that she did not receive the termination notice.

On October 5, 2022, Yakisha Dorsey, a Hamilton Crossings community manager with KMG Prestige, sent an e-mail to Tripp, stating that Frye "asked me to contact you to let you know that she is in good standing with Hamilton Crossing and can continue to reside in her unit." Frye was copied on Dorsey's e-mail. According to Frye, on October 6, 2022, she received an annual reexamination packet from CMA, which she returned before the October 20, 2022 deadline. On November 1, 2022, Frye received a letter from Hamilton Crossing stating that she needed to complete the annual recertification interview for the tax credit program. On January 1, 2023, Frye received a second reminder notice for this recertification interview. The notice stated that her annual recertification was due on February 1, 2023. Frye contends that she signed a new lease agreement and recertification paperwork "[s]ometime between January 1, 2023 and January 10, 2023."

On January 20, 2023, Hamilton Crossing sent Frye a demand for possession on the basis of an alleged failure to pay $217 in rent. According to Frye, when she went to Hamilton Crossing's office to inquire about the demand, she was told that "her voucher had been terminated in August" and thus her recertification paperwork was not processed.

On March 23, 2023, Frye's attorney sent a FOIA[3] request to MSHDA. MSHDA's response did not include any documents from 2022. On April 27, 2023, Frye's attorney e-mailed MSHDA, stating that Frye had never received a termination notice, so she was unaware of her termination until long after it had apparently become effective. Frye's attorney explained that the FOIA response contained no records from 2022 or of Frye's termination, and that Frye "wishes to file an appeal." A senior staff attorney for MSHDA's Legal Affairs Division replied by e-mail stating that he was forwarding the e-mail to MSHDA's Audit, Compliance, and Fraud Investigation Unit. Frye's attorney followed up with MSHDA twice in May 2023 regarding the additional documents. On July 27, 2023, MSHDA supplemented its FOIA response with a copy of the September 13, 2022 notice terminating Frye from the HCV program. On August 8, 2023, Frye's attorney sent a second FOIA request to MSHDA, requesting any e-mails between CMA and MSHDA related to Frye.

On August 22, 2023, Frye received a complaint for nonpayment of rent. On August 23, 2023, Frye's attorney e-mailed a letter to MSHDA with supporting exhibits requesting an informal

---

[3] Freedom of Information Act, see MCL 15.231 *et seq*.

"late hearing." MSHDA's attorney answered that he had "absolute [sic] no authority" to consider the request but would forward it to the appropriate units. MSHDA's attorney further stated:

> There are general mechanisms in the Michigan Administrative Procedures Act and the federal and state FOIA statutes as to seeking redress from final administrative decisions and what a FOIA requester feels to be an inadequate or improper FOIA response. I believe that the options may include seeking relief from the courts, as well as various formal mechanisms of requesting agency action.

On August 24, 2023, MSHDA sent Frye MSHDA form 60a—Informal Hearing Status Update—stating, "The request for Informal Hearing will not be honored as it was received after the 15-business day deadline. You have 10 days if you wish to dispute this denial." On the same date, Frye's attorney sent an e-mail to MSHDA requesting an explanation for the denial and inquiring about the dispute process. A MSHDA employee e-mailed Frye's attorney stating if Frye disputed the denial, "Management for the Compliance department will review and decided [sic] if there is a logical reason the tenant did not respond to the hearing request." MSHDA's compliance department manager also e-mailed Frye's attorney stating if Frye disputed the denial "within 10-business days of the date on the MSHDA-60a, our office will review the explanation provided with the dispute and determine if extenuating circumstances exist that would allow for the late hearing request to be accepted."

Frye's attorney sent MSHDA a dispute of the informal hearing denial with supporting exhibits on September 6, 2023, which was within the 10-business day deadline. MSHDA's counsel responded in a September 7, 2023 e-mail that "MSHDA again declines to extend [Frye] another offer for a hearing" because the request "was untimely and not in accordance with MSHDA and HUD program guidelines." MSHDA's counsel explained, "Our staff understand that [Frye] insists that she did not receive the September 2022 Notice of Termination but given our own records we do not believe that to be true." Counsel further stated, "As has been the case since late October 2022, and as I have previously suggested, your client's available recourse lays with the Michigan Administrative Procedures Act or with the courts."

On November 2, 2023, Frye filed a claim of appeal in the circuit court. With it, she also moved to stay enforcement and reinstate benefits and allow the taking of additional proofs. The circuit court denied Frye's motions and dismissed the appeal for lack of jurisdiction. The circuit court concluded that Frye's "request for a hearing was untimely" and therefore "[n]o contested case was ever properly initiated through [MSHDA]'s administrative procedures." The circuit court further held that MSHDA's September 7, 2023 e-mail denying the hearing "was not a final decision and order issued in a contested case under the Administrative Procedures Act." The court declined to decide whether Frye had a right "to pursue litigation in an original jurisdiction proceeding."

Frye moved for reconsideration, which the circuit court denied, finding that Frye failed to exhaust administrative remedies and that "a final decision or order in a contested case . . . was not issued." The court further stated that its "jurisdiction vests . . . with the issuance of an agency's *final decision and order* following an administrative agency's hearing procedures," and that "Plaintiff attempts to appeal an email" that offered merely "a procedural determination." The court

additionally found that "Plaintiff's request for an evidentiary hearing was received nearly 11 months after Plaintiff's benefits were revoked."

This appeal followed.

## II. STANDARD OF REVIEW

"[W]hether a court has subject-matter jurisdiction is a question of law reviewed de novo." *Elba Twp v Gratiot Co Drain Comm'r*, 493 Mich 265, 278; 831 NW2d 204 (2013). "Issues involving the interpretation of statutes or court rules are also reviewed de novo as questions of law." *Pontiac Food Ctr v Dep't of Community Health*, 282 Mich App 331, 335; 766 NW2d 42 (2008). In addition, "[w]hether due process has been afforded is a constitutional issue that is reviewed de novo." *Elba Twp*, 493 Mich at 277.

## III. JURISDICTION

Plaintiff argues that the circuit court erred by declining to exercise jurisdiction over her claim of appeal. We agree.

Resolution of this issue requires interpretation of the APA and federal regulations. "The principal goal of statutory interpretation is to give effect to the Legislature's intent, and the most reliable evidence of that intent is the plain language of the statute." *South Dearborn Environmental Improvement Ass'n, Inc v Dep't of Environmental Quality*, 502 Mich 349, 360-361; 917 NW2d 603 (2018). "We accord to every word or phrase of a statute its plain and ordinary meaning, unless a term has a special, technical meaning or is defined in the statute." *Guardian Environmental Servs, Inc v Bureau of Const Codes and Fire Safety*, 279 Mich App 1, 6; 755 NW2d 556 (2008). "Where the statutory language is unambiguous, the plain meaning reflects the Legislature's intent and the statute must be applied as written." *Honigman Miller Schwartz & Cohn LLP v City of Detroit,* 505 Mich 284, 294; 952 NW2d 358 (2020) (cleaned up). We must assign each word and phrase "such meanings as are in harmony with the whole of the statute, construed in light of history and common sense." *Id*. at 295.

As plaintiff, Frye has the burden of establishing jurisdiction. See *Davis v Dep't of Corrections*, 251 Mich App 372, 375; 651 NW2d 486 (2002). The circuit court concluded that it lacked jurisdiction and was required to dismiss the appeal because "[n]o contested case was ever properly initiated through MSHDA's administrative procedures because [Frye's] request for a hearing was untimely," an evidentiary hearing was not held, and MSHDA had not issued "a final decision and order." The circuit court's interpretation of the APA was too narrow.

The APA confers a right to appeal, after exhaustion of all administrative remedies, upon a person "aggrieved by a final decision or order in a contested case." MCL 24.301. A court also has discretion to grant leave to review "[a] preliminary, procedural or intermediate agency action or ruling . . . if review of the agency's final decision or order would not provide an adequate remedy." *Id*. The APA defines a "contested case" as "a proceeding . . . in which a determination of the legal rights, duties, or privileges of a named party is required by law to be made by an agency after an opportunity for an evidentiary hearing." MCL 24.203(3).

First, the trial court erred by concluding that there was not a contested case. Federal HUD regulations require a PHA such as MSHDA to provide a participant family[4] with an opportunity for an informal hearing before terminating housing assistance payments because of a participant's "action or failure to act" or "because the participant family has been absent from the assisted unit for longer than the maximum period permitted under PHA policy and HUD rules." 24 CFR 982.555(a)(1)(iv), (v), (2). Before the termination, the PHA must provide written notice to the participant that includes the reasons for the decision, that an informal hearing may be requested, and the deadline to request an informal hearing. 24 CFR 982.555(c)(2). If a hearing is requested, "the PHA must proceed with the hearing in a reasonably expeditious manner . . . ." 24 CFR 982.555(d). Before the hearing, the participant is entitled to discovery of any relevant PHA documents. 24 CFR 982.555(e)(2). The participant is entitled to be represented by counsel, 24 CFR 982.555(e)(3), and the parties "must be given the opportunity to present evidence, and may question any witnesses" at the informal hearing, 24 CFR 982.555(e)(5). The hearing officer must issue a written decision and all factual determinations must "be based on a preponderance of the evidence presented at the hearing." 24 CFR 982.555(e)(6). Because the HUD regulations require the PHA to give a participant an opportunity for an informal hearing *before* terminating housing assistance, we conclude that this is a contested case.

The APA provides for judicial review in a contested case when a person is aggrieved by a "final decision or order." MCL 24.301. The APA does not define "final decision or order." But the APA provides a list of requirements for a final decision or order. For example, the APA mandates that an agency make a final decision or order in a contested case "within a reasonable period." MCL 24.285. The APA directs that the decision must be in writing or stated in the record and shall include findings of fact and conclusions of law separated into sections captioned or entitled 'findings of fact' and 'conclusions of law,' respectively." *Id*. The APA also requires that a copy of the decision or order be immediately delivered or mailed to each party and attorneys of record. *Id*.

Within 10 business days of receiving MSHDA form 60a, Frye's attorney sent MSHDA a dispute of the informal hearing denial with supporting exhibits. MSHDA, through its senior staff attorney, denied Frye's dispute in an e-mail sent to her attorney the following day. The decision did not "include findings of fact and conclusions of law separated into sections captioned or entitled 'findings of fact' and 'conclusions of law,' respectively" as required by MCL 24.285. "The necessity for a detailed finding of fact . . . is intended to facilitate appellate review by providing a precise statement of what evidence, on the record, supports the agency's ruling." *Consumers Power Co v Michigan Public Service Commission*, 78 Mich App 581, 585; 261 NW2d 10 (1977). When a decision does not include sufficient findings of fact, it is necessary to remand the matter to the agency for a supplemental opinion. See *id*. at 585-586. But this defect does not affect the finality of the decision. MSHDA's counsel clearly stated that MSHDA's denial of Frye's request for an informal hearing was its final decision: "As has been the case since late October 2022, and as I have previously suggested, your client's available recourse lays with the

---

[4] A "participant family" is "[a] family that has been admitted to the PHA program and is currently assisted in the program." 24 CFR 982.4(b).

Michigan Administrative Procedures Act or with the courts." It was also clear from that e-mail that there were no other administrative remedies available to Frye.

Frye exhausted all available administrative remedies and was aggrieved by MSHDA's final decision to deny her an informal hearing regarding its termination of her housing assistance in this contested case. Accordingly, the circuit court erred by concluding that it did not have jurisdiction to review this matter.

## IV. BASIS FOR TERMINATION AND NOTICE

Frye further argues that the trial court erred by refusing to review the matter because the current record reveals deficiencies regarding MSHDA's basis for termination and the notice allegedly provided. We agree.

The state and federal constitutions guarantee that no person shall be deprived of life, liberty, or property without due process of law. US Const, Am XIV, § 1; Const 1963, art 1, § 17; *Reed v Reed*, 265 Mich App 131, 159; 693 NW2d 825 (2005). Participation in a public housing program is a property interest protected by due process. *Davis v Mansfield Metro Housing Auth*, 751 F2d 180, 184 (CA 6, 1984). Due process requires that participants receive adequate notice of the grounds for termination and must be afforded an informal hearing prior to termination. See *id*., at 185 n 4; see also 24 CFR 982.555.

"Due process requires fundamental fairness." *Dobrzenski v Dobrzenski*, 208 Mich App 514, 515; 528 NW2d 827 (1995). "The core of due process is the right to notice and a meaningful opportunity to be heard." *LaChance v Erickson*, 522 US 262, 266; 118 S Ct 753; 139 L Ed 2d 695 (1998). "To comport with due process, notice, when required, must be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Elba Twp*, 493 Mich at 287-288 (cleaned up). "[T]he means employed to notify interested parties must be more than a mere gesture; they must be means that one who actually desires to inform the interested parties might reasonably employ to accomplish actual notice." *Sidun v Wayne Co Treasurer*, 481 Mich 503, 509; 751 NW2d 453 (2008). "[T]he reasonableness of a particular method could vary, depending on what information the government had." *Id*. at 510.

As discussed, federal HUD regulations require a PHA such as MSHDA to give a voucher participant an opportunity for an informal hearing *before* terminating housing assistance payments because of a participant's "action or failure to act" or "because the participant family has been absent from the assisted unit for longer than the maximum period permitted under PHA policy and HUD rules." 24 CFR 982.555(a)(1)(iv), (v), (2). The PHA must provide written notice to the participant that includes the reasons for the decision, that an informal hearing may be requested, and provide the deadline to request an informal hearing. 24 CFR 982.555(c)(2).

HUD regulations require MSHDA to "adopt a written administrative plan that establishes local policies for administration of the program in accordance with HUD requirements." 24 CFR 982.54. "An agency is under a duty to follow its own rules." *Detroit Base Coalition for Human*

*Rights of Handicapped v Dep't of Social Servs*, 431 Mich 172, 189; 428 NW2d 335 (1988). MSHDA's Administrative Plan[5] describes its policy on notice of termination:

> Whenever a family's assistance will be terminated, MSHDA will send a written notice of termination to the family and to the owner. MSHDA will also send a form HUD-5382 and form HUD-5380 to the family with the termination notice. The notice will state the date on which the termination will become effective. This date generally will be at least 30 calendar days following the date of the termination notice, but exceptions will be made whenever HUD rules, other PHA policies, or the circumstances surrounding the termination require. [Administrative Plan, ch 12-II.F.]

MSHDA's Administrative Plan makes it clear that a participant family must be afforded an opportunity for an informal hearing when required by the HUD regulations, such as when MSHDA makes "[a] determination to terminate assistance because the participant family has been absent from the assisted unit for longer than the maximum period permitted under PHA policy and HUD rules." Administrative Plan, ch 16-III.C.

Frye maintains that she did not receive the termination notice and thus she could not timely request an informal hearing. In denying Frye's late request for a hearing, MSHDA's counsel explained, "Our staff understand that [Frye] insists that she did not receive the September 2022 Notice of Termination but given our own records we do not believe that to be true." While the notice is dated September 13, 2022, there is no other documentation to establish that the notice was actually sent to Frye. There's also a question whether the termination notice was sent to the proper address. MSHDA terminated Frye from the HCV program because it contended that she had moved from her Hamilton Crossing rental unit. However, that's the address listed on the termination notice that MSHDA allegedly sent to Frye, which raises the question whether the notice was reasonably calculated to apprise Frye of the termination and afford her an opportunity to present her objections. See *Elba Twp*, 493 Mich at 287-288. Frye was not afforded an opportunity to present proofs establishing lack of notice, but the existing record supports the inference that Frye never received the termination notice.

Even assuming that there is evidence that the notice was sent to Frye on September 13, 2022, there is a dispute whether the notice was proper. The notice stated that Frye's rental assistance was terminated on August 31, 2022, which was 13 days *before* the notice was issued. HUD regulations and MSHDA's Administrative Plan require that the notice be provided *before* termination from the voucher program. See 24 CFR 982.555(a)(1)(iv), (v), (2); Administrative Plan, ch 12-II.F. In fact, MSHDA's policy is to provide the notice 30 days before the termination. Administrative Plan, ch 12-II.F.

---

[5] Michigan State Housing Development Authority, *Housing Choice Voucher Administrative Plan* <https://www.michigan.gov/mshda/rental/housing-choice-voucher/housing-choice-voucher-administrative-plan> (accessed July 24, 2026).

There is also a dispute whether Frye violated any specific program rules regarding use and occupancy of the rental unit. Relevantly, the HUD regulations state:

(h) Use and occupancy of unit—

(1) The family must use the assisted unit for residence by the family. The unit must be the family's only residence.

(2) The composition of the assisted family residing in the unit must be approved by the PHA. . . . The family must request PHA approval to add any other family member as an occupant of the unit. No other person [i.e., nobody but members of the assisted family] may reside in the unit . . . .

(3) The family must promptly notify the PHA if any family member no longer resides in the unit.

* * *

(i) Absence from unit. The family must supply any information or certification requested by the PHA to verify that the family is living in the unit, or relating to family absence from the unit, including any PHA-requested information or certification on the purposes of family absences. The family must cooperate with the PHA for this purpose. The family must promptly notify the PHA of absence from the unit. [24 CFR 982.551(h), (i).]

Expanding on the HUD regulations, MSHDA's Administrative Plan states, "Generally, an individual who is or is expected to be absent from the assisted unit for 180 consecutive days or less is considered temporarily absent and continues to be considered a family member." Administrative Plan, ch 3-I.L. "Participants must notify [defendant] in writing at least 10 business days before leaving their unit if they are going to be absent from the unit for more than three consecutive weeks." *Id*. If the family intends to be absent for more than three weeks but less than three months:

The family must provide written notice to MSHDA that the unit will be temporarily vacant. The notice must include the beginning and ending dates of the vacancy. MSHDA approval is not required for the family to temporarily vacate the unit for up to three months. [*Id*.]

"If the family is absent from the unit for more than 180 consecutive calendar days, the family's assistance will be terminated." Administrative Plan, ch 12-I.E. "MSHDA will use the concept of the preponderance of the evidence as the standard for making all termination decisions." Administrative Plan, ch 12-II.D.

If the preponderance of the evidence does not establish that Frye was absent from the rental unit for three consecutive weeks, then she did not violate the program rules. Further, termination was not authorized unless "the family," which includes Frye's son, was absent from the rental unit for 181 consecutive days. MSHDA did not include any of these allegations in the termination notice and there was no further factual development because there was no hearing.

The factual record regarding the sufficiency of the notice needs to be developed to assess whether proper notice was ever sent and whether Frye was properly denied an informal hearing. Given the insufficient factual record, we cannot reach the merits of Frye's claims or determine whether MSHDA's actions have deprived her of her constitutional right to due process. In a contested case, when the factual record created before the administrative tribunal is insufficient to address the plaintiff's claims, the prudent course of action is to remand the case to the administrative agency with instructions to "further develop the administrative record." *Hicks v Dep't of Commerce*, 220 Mich App 501, 510; 560 NW2d 54 (1996); see also MCL 24.305; MCR 7.216(A); *Mich Ass'n of Home Builders v Director of Dep't of Labor and Economic Growth*, 481 Mich 496, 500; 750 NW2d 593 (2008).

## V. CONCLUSION

We reverse the circuit court's dismissal of Frye's appeal on jurisdictional grounds and remand this matter for further development of the administrative record. On remand, the circuit court shall order the taking of additional evidence before the agency regarding whether Frye received sufficient proper notice and was entitled to an informal hearing.

Reversed and remanded. We do not retain jurisdiction.

/s/ Michael J. Kelly
/s/ Sima G. Patel
/s/ Daniel S. Korobkin

-10-